IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JEANNETTE I. LOVETTE                                                                          PLAINTIFF

v.                    Civil No. 04-2265

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Jeannette I. Lovette brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See 42 U.S.C. § 405(g).*

**Procedural Background**

The plaintiff filed her application for DIB on January 9, 2002, alleging an onset date of June 30, 1990. (Tr. 134, 137.) Plaintiff was eligible for DIB through September 30, 1995. (Tr. 134.) Her application was initially denied (Tr. 100-107) and that denial was upheld upon reconsideration (Tr. 108-111). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 112.) Although initially scheduled for a hearing (Tr. 122), the ALJ issued a favorable decision without a hearing (Tr. 64-71). The Appeals Council reviewed that decision, and after review, vacated the ALJ's decision and remanded the case to an ALJ for further proceedings. (Tr. 74-79.)

On September 16, 2003, a different ALJ held a hearing at which the plaintiff and her

daughter testified. The plaintiff was represented by counsel at this hearing. (Tr. 26.) The ALJ issued an unfavorable ruling on February 19, 2004, deciding that the plaintiff was not disabled withing the meaning of the Act. (Tr. 8-18.) The plaintiff then requested a review of the hearing by the Appeals Council (Tr. 7), which denied that request on October 26, 2004 (Tr. 4-6); thus, the ALJ's decision became the final action of the Commissioner. The plaintiff filed her complaint with this court on December 2, 2004, seeking judicial review of that decision. (Doc. 1.) Both parties have filed appeal briefs with the court.[1] (Docs. 7 & 8.) This case is before the undersigned pursuant to the consent of the parties. (Doc. 5.)

**Evidence Presented**

The plaintiff's date of birth is February 20, 1947, and she was 56 years of age at the time of the administrative hearing. She possesses a GED. (Tr. 28.) Plaintiff testified that she worked for Carolina Trucking from 1989 to 1991 as an office worker with responsibilities including billing, answering the telephone, filing, and dispatching trucks. Plaintiff testified that the position required sitting approximately 70 percent of her time and standing approximately 30 percent of her time, and her lifting requirements were five to seven pounds. Although plaintiff remained employed by the trucking company after being diagnosed with cancer in 1990, she was never able to return to full-time employment following the diagnosis. (Tr. 28-29.)

In 1986 or 1987, plaintiff worked for Wal-Mart as a cashier and then as a stocker, with lifting requirements of 20 to 25 pounds, and very little sitting. She worked there for

---

[1]Plaintiff's counsel is reminded that additional medical evidence submitted on behalf of his client should be filed in a separate motion to this court. Additional medical evidence should be submitted in chronological order without duplication in either the motion itself or the evidence already before the court. Further, this evidence should be submitted to the Social Security Administration.

-2-

approximately six months. (Tr. 30-31.) Sometime between 1980 and 1989, the plaintiff also worked for a year to a year and a half with a different trucking company where she performed similar duties to her job with Carolina Trucking. (Tr. 31.)

On July 12, 1990, plaintiff underwent a radical mastectomy of her left breast after a cancerous tumor was located. (Tr. 175-89.) At the time, she was 43 years old. (Tr. 178.) In December 1990, plaintiff began breast reconstruction procedures. Dr. Perry Franz performed the reconstruction surgery. (Tr. 190-216; 223-251.) In May 1991, Dr. Franz referred plaintiff to Dr. Charles Reul for a possible stroke due to numbness in the hands and slurring of her speech. (Tr. 217; 238, 242-43.) Plaintiff reported numbness and tingling in her hands. This came on gradually and was greater in the right hand than the left hand. Dr. Reul diagnosed plaintiff with "carpal tunnel syndrome right much greater than left, secondary to hypothyroidism," and remarked that "the likely possibility is that her symptoms are secondary to her hypothyroidism and will clear after this has been successfully treated." (Tr. 217-18.)

In April 1991, plaintiff was treated by Dr. Rebecca Floyd. At that time, plaintiff reported she had "developed some swelling and puffiness in her face and hands;" had a weight increase without a change in appetite; slurring of speech following the reconstruction surgery; and mild decrease in strength, tingling, and pain in her right hand. Plaintiff also reported to Dr. Floyd that she had been on thyroid replacements since childhood but had been taken off of them a few years earlier. On a follow-up exam two weeks later, Dr. Floyd reported that the test results revealed plaintiff had "profound hypothyroidism." Upon receiving the test results, Dr. Floyd prescribed Synthroid, 25 micrograms, and the plaintiff had been taking that medication for one week prior to the follow-up exam. At the follow-up exam, plaintiff continued to have non-pitting edema

of the face, legs, and hands. Dr. Floyd increased the Synthroid to 50 micrograms, with a plan to continue to increase until the proper level was reached. (Tr. 265-70.) On July 30, 1991, Dr. Floyd sent a memorandum to Dr. Franz, stating that the plaintiff "has had a resolution of the slurring of her speech and muscle weakness and her peripheral edema is markedly improved." Dr. Floyd opined that plaintiff's condition was such that she could continue breast reconstruction surgeries. (Tr. 261.)

In October 1993, plaintiff was treated by a Dr. John H. Wikman for swelling in her left hand and arm. Dr. Wikman prescribed Lasix and Keflex, and instructed her to wrap and elevate her arm. (Tr. 271, 273.)

In December 1993, plaintiff met with Dr. Floyd, again complaining about swelling in her left arm. Dr. Floyd noted that plaintiff had problems with lymphedema in the past, had marked swelling in her fingers, and had a blister-like lesion on her left middle finger, but did not have any markedly enlarged lymph nodes. Dr Floyd prescribed fluid pills, Keflex, and directed the plaintiff to keep the arm elevated and wrapped in an Ace bandage. Plaintiff was to inform Dr. Floyd if her condition either worsened or did not improve. (Tr. 252.)

In a January 1994 follow-up exam, Dr. Wikman noted that plaintiff still had a "little bit of swelling in the left arm." He gave "her the usual helpful information pertaining to that" and noted that he would check her again in six months. Plaintiff did not keep that follow-up appointment that was set for July 25, 1994. (Tr. 271.)

In June 1996, plaintiff saw Dr. Robert Baker for a thyroid recheck and to discuss weight control. In January, February, March, April, and June 1997, she had a follow-up exam on the weight-control issue. (Tr. 291-96.) Dr. Baker noted in June that plaintiff had lost 16 pounds.

AO72A
(Rev. 8/82)

He also noted that she was "having some problems with her knees, has pain and stiffness particularly [sic] when she gets up and down out of a chair." Upon examination of her knees, Dr. Baker determined that the "knees do not show any effusion, deformity, or particularly pain to palpitation. The range-of-motion is full." Dr. Baker challenged the plaintiff to use her husband's weight bench which has a leg attachment to do light weight, multiple repetition extension exercises. (Tr. 291.) In April 1998, Dr. Baker saw the plaintiff for a rash, which the plaintiff feared was a parasite because one area looked like a burrow. Dr. Baker noted that plaintiff had "been out doing some fishing." Dr. Baker diagnosed the rash as poison ivy. (Tr. 281.)

In February 2001, plaintiff had a total mastectomy of her right breast following a diagnosis of a cancerous tumor in that breast. (Tr. 300-16.) Dr. Paul Armstrong noted that plaintiff had "no complaints of pain, no palpable disease that she is aware of, no complaints of back pain or abdominal pain, no acute change in weight gain/loss." (Tr. 314.) Dr. Eugene Still performed a reconstruction of the right breast. (Tr. 317-24.)

At the hearing, plaintiff testified that in the early 1990s, reconstruction of her left breast was temporarily halted due to her slurred speech, pains in her hands and arms, and swelling. That is when Dr. Floyd began treating her hypothyroidism. Plaintiff testified that she also had pain in her lower back, and that the pain would start at night while she was trying to sleep. Plaintiff testified that she took Hydrocodone and Darvocet for the pain, however she would sometimes take Tylenol instead, due to the cost of the pain medications and her desire not to become addicted to the medications. According to the plaintiff, these medications were prescribed by Dr. Baker. (Tr. 34-38.)

Plaintiff testified that prior to 1995, she spent most of her days sitting on the couch or in a chair either watching television or reading a book. Her husband and daughter would do the housework, grocery shopping, and cooking. The daughter, who did not live with the plaintiff, would spend eight and a half to nine hours each day with the plaintiff from 1991 until approximately 1994. After that, the daughter would care for the plaintiff all day from two to four days a week. (Tr. 38-40; 44.) Plaintiff testified that from 1991 to 1995, she needed help with some personal needs such as washing her hair because she was unable to hold her arms up long enough to complete the tasks. Occasionally, the plaintiff would attend church services on Sundays, when her daughter would take her. Around 1997, plaintiff began driving herself places, such as to church and the grocery store. (Tr. 41-44.)

Plaintiff testified that the pain and swelling in her hands, feet, arms, and legs remained about the same from 1995 through the date of the hearing in 2003. (Tr. 45.) Plaintiff testified that despite taking Synthroid, she has continued to have pain, numbness, and tingling in her legs, hands, and arms, and has suffered with tiredness and weakness. Plaintiff testified that she could sit for twenty minutes to an hour, but then would need to move around to stretch her arms and legs. Normally she would have to stand and move around after sitting for fifteen to twenty minutes. Plaintiff testified that she could walk a block three to four times a day, and can lift and carry five to six pounds. She testified to an inability to squat, kneel, crawl, or climb stairs. She has some numbness in her fingers that makes it difficult to pick up small objects and still has pain and swelling in her arms and hands everyday. (Tr. 45-54.)

Plaintiff's daughter, Kim Phillips, testified that after the first breast reconstruction surgery, she was helping her mother every day with cooking, cleaning, and grocery shopping.

She also helped the plaintiff dress and with the plaintiff's hair. (Tr. 55-59.) Phillips testified that her mother's condition had not improved since 1995, and that her mother had some memory problems. (Tr. 59-61.)

After consideration of the record, the ALJ determined that: (1) plaintiff was insured for purposes of DIB until September 30, 1995, (2) plaintiff had not engaged in substantial gainful activity since the alleged onset date, (3) plaintiff had severe impairments, based upon requirements in the Regulation, (4) plaintiff's medically determinable impairments did not meet or medically equal those listed impairments in Appendix 1, Subpart P, Regulation No. 4., (5) plaintiff's allegations regarding her limitations were not totally credible, (6) plaintiff had the residual functional capacity of medium work, as defined by the Regulations, with the limitations that plaintiff lift and/or carry and push and/or pull no more than 25 pounds frequently and 50 pounds occasionally, stand and/or walk up to six hours of an eight hour day, and no rapid and/or repetitive motion with both wrists, (7) plaintiff's past relevant work did not require the performance of work-related activities precluded by her residual functional capacity, (8) plaintiff's medically determinable impairments did not prevent her from performing her past relevant work, and (9) plaintiff was not under a "disability" as defined by the Act at any time from the alleged onset date through the date last insured. (Tr. 17-18.)

On appeal of the ALJ's determination, Plaintiff argues the ALJ (1) improperly discredited her subjective complaints of pain, (2) inaccurately determined her residual functional capacity, and (3) erroneously concluded that she could return to her past relevant work. Specifically, plaintiff contends that the medical evidence supports her subjective complaints of pain, the ALJ failed to consider plaintiff's problems with lymphedema, and the ALJ failed to indicate specific

inconsistency in the record. Plaintiff also argues that the ALJ erred in not presenting testimony from a vocational expert as to the requirements of plaintiff's past work. Additionally, plaintiff argues that the ALJ's stated restrictions on her ability to perform rapid or repetitive motions are incompatible with her work as a dispatcher/office clerk as plaintiff testified that this job required her to use a typewriter and computer throughout the work day. (Doc. 7.) The Commissioner has filed a reply brief (Doc. 8), countering plaintiff's arguments on appeal.

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion**

In determining plaintiff's residual functional capacity (RFC), the ALJ determined plaintiff's physical conditions were not so severe as to prevent her from performing certain physical tasks, such as lifting and/or carrying and pushing and/or pulling no more than 25 pounds frequently and 50 pounds occasionally, and standing and/or walking up to six hours of an eight hour day. The ALJ noted, however, that plaintiff could not perform rapid and/or repetitive

AO72A
(Rev. 8/82)

motion with both wrists. This determination was presumably made based on plaintiff's history of carpal tunnel syndrome during the relevant time period. The ALJ noted that his determination of plaintiff's RFC is consistent with the opinions of Dr. Jerry L. Thomas and Dr. R. W. Beard, the agency's non-examining consultants, who completed RFC assessments of the plaintiff. (Tr. 325-342.) Both of these doctors stated that plaintiff should be restricted from performing tasks that require rapid or repetitive motions of both wrists. (Tr. 328, 338.)

Despite the RFC determination, the ALJ also determined that plaintiff could have performed her past relevant work as a truck dispatcher/office worker. Plaintiff contends that the ALJ erred in determining that she could perform her past relevant work because (1) the ALJ failed to consider testimony of a vocational expert, (2) the ALJ did not make explicit findings about the physical requirements of her past relevant work, and (3) the RFC determination limited rapid and repetitive motion in plaintiff's wrists, which is in conflict with the computer and typing work plaintiff was required to perform in her past relevant work.

We agree that the ALJ's RFC determination for the plaintiff and subsequent finding that plaintiff could perform her past relevant work as a dispatcher/office worker are not reconcilable. Presumably, the ALJ based the restriction of "no rapid and/or repetitive motion with both wrists" on the reports that plaintiff was suffering from carpal tunnel syndrome. *The Merek Manual* notes that "[a]ctivities or jobs that require repetitive flexion and extension of the wrist (eg, keyboard use) may pose an occupational risk" for carpal tunnel syndrome. *See The Merek Manual* 491 (17th Ed. 1999). The Commissioner's argument that the rapid and repetitive motion restriction on the plaintiff's wrist would not prevent her from performing keyboarding tasks as such tasks involve the fingers and not the wrists is without merit. The ALJ does not appear to consider this

-10-

limitation when determining that plaintiff could perform her past relevant work as a dispatcher/office worker, which requires from plaintiff that she perform work on a computer and typewriter. In fact, the ALJ simply states, "[t]he evidence in this case establishes that the claimant has [sic] past relevant work as described above and based upon claimant's residual functional capacity, the clamant could have performed her past relevant work as described above, as it was performed by the claimant."

"An ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements. The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's residual functional capacity." *Groeper v. Sullivan,* 932 F.2d 1234, 1238-39 (8th Cir.1991). The Administration's own interpretation of the regulations reflects this need for specificity. The determination that a "claimant retains the functional capacity to perform past work . . . has far-reaching implications and must be developed and explained fully in the disability decision." S.S.R. No. 82-62. *See also Sells v. Shalala,* 48 F.3d 1044, 1046 (8th Cir.1995) (discussing Ruling 82-62). "This court has held, consistent with Ruling 82-62, that '[a] conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his [or her] past work.' " *Id.* (quoting *Groeper,* 932 F.2d at 1239).

The ALJ has a duty to "*fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work." *Nimick v. Secretary of Health & Human Serv.,* 887 F.2d 864, 866 (8th Cir.1989) (emphasis in original). Here, the ALJ simply provides a conclusory statement that plaintiff can

perform to her past relevant work without discussing the details of that work and specifically without considering how the wrist restriction in the RFC would affect plaintiff's ability to perform her past relevant work. This analysis is insufficient, and thus remand is appropriate.

In light of this opinion, we decline to discuss the other issues raised by plaintiff in her appeal brief.

**Conclusion:**

Accordingly, the ALJ's decision denying DIB to the plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for consideration of plaintiff's ability to perform her past relevant work in light of the stated RFC and whether plaintiff could perform other work in the national economy, after considering the testimony of a vocational expert.

DATED this 17th day of February 2006.

                                         **/s/ Beverly Stites Jones**
                                         _____
                                         HON. BEVERLY STITES JONES
                                         UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)